# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHEN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUFINA PASSAMENTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| FERRARA CANDY COMPANY, | ) ) ) **JURY DEMANDED** |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, RUFINA PASSAMENTT, by and through her attorneys, THE COFFEY LAW OFFICE, P.C., states as and for her Complaint against Defendant, FERRARA CANDY COMPANY, as follows:

### Nature of Case

1. Plaintiff brings this action against Defendant for injunctive relief and to recover damages proximately caused by Defendant's illegal discrimination, failure to accommodate and retaliation in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 *et seq.* (the "ADA"), and illegal retaliatory discharge in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and Illinois common law and clearly mandated public policy as embodied in the Illinois Worker's Compensation Act, 820 ILCS § 305/1 *et seq.* (the "IWCA").

### Jurisdiction and Venue

2. This Court has original jurisdiction over Plaintiff's ADA and FMLA claims under 28 U.S.C. §§ 1331, 1337, and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's state law retaliation claim pursuant to 28 U.S.C. 1367(a).

4. Venue is proper in this Court in that Defendant's illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

5. On May 16, 2022, Plaintiff timely filed a charge of disability discrimination, failure to accommodate her disability, and retaliation against Defendant with the local district office of the EEOC.

6. On January 4, 2023, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's charge, a copy of which is attached hereto.

7. This complaint has been filed within 90 days of Plaintiff's receipt of the EEOC Right to Sue Notice.

## The Parties

8. Plaintiff, RUFINA PASSAMENTT (hereafter "Rufina"), is an individual who at all times relevant to this Complaint resided and worked within the jurisdictional boundaries of this Court.

9. Defendant, FERRARA CANDY COMPANY (hereafter "Ferrara"), is a domestic corporation registered and licensed to do business in Illinois, and at all times relevant to the allegations herein, conducting a significant business at various facilities offices, and plants within the geographical boundaries of this Court, Illinois, where its illegal activities described below took place.

10. At all relevant times, Ferrara employed in excess of 100 employees at its various facilities within this Court's jurisdiction and was thus an employer and covered entity as defined under the ADA and FMLA.

**Relevant Facts Common to all Counts**

11. Rufina started her employment with Ferrara in 2000 in the position of Packer Operator.

12. Rufina worked for Ferrara at its Itasca, Illinois manufacturing facility.

13. Rufina's job performance at all relevant times met or exceeded Ferrara's legitimate expectations.

14. On May 3, 2018, Rufina was seriously injured at work.

15. Rufina immediately reported the injury to her supervisor.

16. She thereafter fully cooperated and complied with Ferrara's work accident and injury reporting procedures.

17. Her ability to work was thereafter medically restricted, at times she was fully restricted from all work for extended time periods, and she underwent surgeries related to her work injury on her right shoulder in March 2019 and then a right knee replacement surgery in June 2020.

18. In December 2018, Rufina, through her workers' compensation counsel, filed a workers' compensation claim with the Illinois Workers' Compensation Commission (IWCC) related to her May 2018 work injury.

19. In March 2019 and then again in March 2020, Rufina took FMLA leave from work due to her own serious health conditions related to her work injury.

20. Since her work injury and most recently in June 2021, Rufina returned to work at various times with various medical restrictions on her ability to work and requested accommodations due to her related disability of being allowed to return to work in a modified and/or alternate position that allowed her to work within her medical restrictions

and/or reassignment to a different position that she was qualified for.

21. In May 2021, at Ferrara's request, Rufina underwent an alleged Independent Medical Exam on her right knee only (not her right shoulder injury) by Dr. William Hopkinson, a physician chosen by Ferrara. Dr. Hopkinson determined that with respect to the right knee only, Rufina "is at MMI [(Maximum Medical Improvement)] and could return to regular duty despite the fact that she has continued pain," and that "there is no need for any restrictions other than no kneeling."

22. In June 2021, Rufina was examined by her physician, Dr. Berkey with respect to her right knee, right shoulder, and lower back. Dr. Berkey released Rufina to return to work as of June 22, 2021, with the following "permanent restrictions:" no lifting from floor, no lifting > 15 lbs. from waist, no stooping, limited forceful pushing/pulling, no squatting/kneeling, no overhead lifting > 10 lbs., maximum 8 hours/day and 40 hours/week.

23. Rufina requested that Ferrara accommodate her in the form of return to work in a position within her permanent work restrictions.

24. In June 2021, Ferrara notified Rufina that she could in fact return to work in a Packer position within her restrictions, and Rufina agreed to return to work based on Ferrara's representation.

25. Upon her return to work, however, Ferrara repeatedly scheduled Rufina to work numerous hours of "forced" or mandatory overtime.

26. Rufina, in fear of being terminated and believing that she had no choice, worked numerous "forced" OT hours in late June and July 2021.

27. Rufina experienced significant physical and emotional pain, discomfort, and

further injury and disability as a direct result of working the forced OT hours.

28. On July 13, 2021, Rufina notified her supervisor that she could no longer tolerate the pain and needed medical attention.

29. On July 21, 2021, Rufina was again examined by her physicians who determined that she was medically unable to work due to the recent aggravation of her right knee and shoulder injuries. Her physician referred her to additional physical therapy of 2-3 sessions per week for 4-6 weeks, and a return exam in 5 weeks.

30. On August 2, 2021, Ferrara notified Rufina that her employment would be terminated for alleged excessive absences.

31. Rufina's absences in July and August 2021 were a direct result of Ferrara failing to accommodate Rufina with work within her permanent medical restrictions and, instead, intentionally scheduling her to work beyond her restrictions including forced OT on numerous days.

### Count I: Disability Discrimination in Violation of the ADA

32. Rufina restates and fully incorporates into Count I the allegations set forth in Paragraphs 1 through 31, above.

33. The ADA makes it unlawful for an employer such as Ferrara to discriminate against a qualified individual on the basis of a disability in regard to discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment, including a failure to make reasonable accommodations to the known physical and mental limitations of an employee who is otherwise a qualified individual with a disability. See 42 U.S.C. § 12112(a) and (b).

34. At all relevant times, Rufina was "disabled" as defined under the ADA, in

that, as described above, she suffered from a medical condition that substantially limited her ability to perform several major life functions including, but not limited to, lifting, standing, bending, and working, and also had a record of such an impairment.

35. At all relevant times, Rufina was a "qualified individual" as defined under the ADA. See 42 U.S.C. § 12111(8).

36. As described above, in June 2021 through to its August 2021 termination of Rufina's employment, Ferrara failed to engage in good faith in an interactive process to identify potential work adjustments, alternate or modified positions, and/or reassignment to an open position that she was qualified for that would have allowed Rufina to work and remain employed within her permanent work restrictions related to her disability.

37. Allowing Rufina to work within her permanent medical work restrictions in the Packer position or another available position that she was qualified for would not have caused undue hardship to Ferrara.

38. On information and belief, Ferrara treated similarly situated, non-disabled employees more favorably than Rufina and did not terminate their employment.

39. As a direct and proximate result of Ferrara's illegal discriminatory conduct as described above, Rufina has lost income in the form of wages, social security, and other benefits, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and she is expected to incur future damages.

40. Ferrara knew that its acts as described above were prohibited by the ADA or acted with reckless disregard to that possibility. Ferrara should therefore be subject

to punitive damages as an example to deter others from engaging in conduct of this kind.

## Count II: Retaliation in Violation of the ADA

41. Rufina restates and fully incorporates into Count II the allegations set forth in Paragraphs 1 through 31, above.

42. The ADA prohibits employers from retaliating against employees who exercise their ADA rights to reasonable accommodation and/or assert their ADA right to be free from discrimination prohibited by the ADA, and from coercing, intimidating, threatening, or interfering with an employee's exercise of an ADA right. See 42 U.S.C. §§ 12203(a) and (b).

43. As described above, Rufina engaged in activities protected by the ADA including requesting and taking a medical leave from work due to her disability and requesting reasonable accommodations to allow her to work within her permanent medical restrictions including relief from certain non-essential job functions including forced overtime work, or work within in an open position for which she was qualified for.

44. Ferrara took the aforementioned actions and omissions against Christine including denying her requests for reasonable accommodation, forcing her to work in excess of her permanent medical restrictions, and terminating her employment because of her ADA-protected activities in violation of the ADA.

45. On information and belief, Ferrara treated similarly situated, non-ADA protected employees more favorably than Rufina and did not terminate their employment.

46. As a direct and proximate result of Ferrara's illegal retaliation as described above, Rufina has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security, and other benefits in a sum to be proven at trial, and has suffered emotional and related physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

47. Ferrara knew that its acts as described above were prohibited by the ADA or acted with reckless disregard to that possibility. Ferrara should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

## Count III: Retaliation in Violation of the FMLA

48. Rufina restates and fully incorporates into Count III the allegations of paragraphs 1 through 31, above.

49. The FMLA was enacted because Congress found, among other things, that "it is important for the development of children and the family unit that fathers and mothers be able to participate in early childrearing and the care of family members who have serious health conditions" and that "the lack of employment policies to accommodate working parents can force individuals to choose between job security and parenting." 29 U.S.C. §§ 2601(a)(2)-(3).

50. The FMLA was intended to "balance the demands of the workplace with the needs of families" and "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1)-(2). The FMLA seeks to accomplish these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

51. The FMLA also prohibits employers from discriminating or retaliating against an employee for exercising or attempting to exercise his or her FMLA rights. 29 U.S.C. § 2615(a)(2).

52. As described above, Chrstine exercised her rights under the FMLA when she requested and took protected FMLA leave in 2019 and 2020.

53. Ferrara took the aforementioned actions and omissions against Rufina, including denying her requests for reasonable accommodation, forcing her to work in excess of her permanent medical restrictions, and terminating her employment because of her ADA-protected activities in violation of the FMLA.

54. On information and belief, Ferrara treated similarly situated, non-FMLA protected employees more favorably than Rufina and did not terminate their employment.

55. As a direct and proximate result of Ferrara's illegal retaliation as described above, Rufina has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security, and other benefits in a sum to be proven at trial, and has suffered emotional and related physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

56. Ferrara knew that its retaliatory acts and omissions as described above were prohibited by the FMLA or acted with reckless disregard to that possibility.

## Count IV: Retaliatory Discharge in Violation of the IWCA and Common Law

57. Rufina restates and fully incorporates into Count IV the allegations set forth in Paragraphs 1 through 31, above.

58. Section 4(h) of the IWCA states:

It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act. 820 ILCS § 305 (4)(h).

59. Section 4(h) of the IWCA embodies and sets forth the clearly mandated public policy of Illinois.

60. As detailed above, Rufina seeking medical treatment including surgeries and missing work related to her May 2018 work injury, retaining workers' compensation counsel, and filing and litigating a workers' compensation claim against Ferrara with the IWCC are individually and in the aggregate activities protected by Illinois common law and the IWCA.

61. Ferrara became aware of Rufina's IWCA-protected activities shortly after she engaged in them.

62. Ferrara took the aforementioned actions and omissions against Rufina including denying her requests for reasonable accommodation, forcing her to work in excess of her permanent medical restrictions, and terminating her employment because of her IWCA-protected activities.

63. On information and belief, Ferrara treated similarly situated, non-IWCA protected employees more favorably than Rufina and did not terminate their employment.

64.     As a direct and proximate result of Ferrara's illegal retaliatory termination of Rufina's employment as described above, she has lost income in the form of wages, social security, and other benefits, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and she is expected to incur future damages.

65.     The above-described conduct by Ferrara was willful and wanton, and with reckless disregard and indifference to Illinois common law and the IWCA, and to Rufina's rights thereunder. Ferrara should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

## Prayer for Relief (as to all Counts)

**WHEREFORE**, Plaintiff, RUFINA PASSAMENTT, respectfully requests that this Court enter judgment in his favor and against Defendant, FERRARA CANDY COMPANY, as follows:

A.      Order Ferrara to make Rufina whole by paying her appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B.      Order Ferrara to immediately reinstate Rufina to work in her former position with reasonable accommodations, or in another suitable position consistent with and within her permanent medical work restrictions; or, in the alternative, order Ferrara to pay Rufina an appropriate amount of front pay;

C.      [Count III] Order Ferrara to pay Rufina an additional amount as liquidated damages equal to the sum of the amount described in Par. A, above.

D.      [Counts I, II and IV] Order Ferrara to pay Rufina compensatory damages in the maximum amount allowable under the law;

E.      [Counts I and IV] Order Ferrara to pay Rufina punitive damages in the maximum amount allowable under the law.

F.      Order Ferrara to pay Rufina's costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

G. Try all issues of fact to a jury; and,

H. Grant such other relief as the Court deems just.

        Respectfully submitted,
        Plaintiff, RUFINA PASSAMENTT,

By:   /s/ Timothy J. Coffey
       Timothy J. Coffey, Esq.
       THE COFFEY LAW OFFICE, P.C.
       Attorneys for RUFINA PASSAMENTT
       118 N. Clinton Street, Ste. 125
       Chicago, IL   60661
       (312) 627-9700
       (630) 326-6601(fax)
       tcoffey@worker-law.com